ALBERT B. SHELDON, Plaintiff, *v.* GLENN H. SOLOMONSON and Another, Defendants.

Supreme Court, Chautauqua County, January 16, 1928.

Mortgages — foreclosure — second mortgage for $800 was given by defendants to third party who subsequently assigned mortgage to plaintiff on payment of $600 — mortgage had its inception when plaintiff took it and paid $600 — mortgage is void for usury — costs — defendants not entitled to costs, under Civil Practice Act, § 1477.

This is an action to foreclose a second mortgage for $800 given by defendants to a third party who subsequently assigned the mortgage to plaintiff on the payment of $600 therefor. Since the mortgage had its inception when plaintiff with knowledge took it and paid $600 for it, it was tainted with usury at its inception and is void, and the complaint must be dismissed.

The action being in equity, the allowance of costs is discretionary, notwithstanding a jury trial was had (Civ. Prac. Act, § 1477), but defendants should not have costs, under the circumstances.

ACTION to foreclose a second mortgage given by defendants to Carl Nordh and by the latter assigned to plaintiff. The defense is usury.

*Emmet H. Ross*, for the plaintiff.

*Clive Wright*, for the defendants.

CROSBY, J. The parties stipulated, in open court, as follows: " That this is an action to foreclose a mortgage. That the defense is usury. That the court try the action at this time by and with the aid and advice of a jury upon such questions of fact as the court sees fit to submit to the jury." The parties did not settle any issues of fact to be tried, but, contrary to the advice of the court, elected to try and submit the case in accordance with the stipulation hereinabove quoted.

The trial finished, the court submitted the following question to the jury: " Did the plaintiff Sheldon, at the time that he took the assignment of the mortgage in question from Carl Nordh and paid $600 therefor, have knowledge that it was a usurious transaction? " The jury's answer was: " Yes." Plaintiff's attorney requested that the following question should also be submitted to the jury, viz.: " Was Carl Nordh the agent of the plaintiff, or the agent of the defendants, in the transaction? " This request was denied on the ground that an answer to this latter question, either way, could not change the result, and that an answer to the question that was submitted would be decisive of the case, so far as the facts were concerned. The truth of this contention becomes clear when one considers the undisputed facts of the case.

The following facts are conceded: (1) That defendants gave an $800 mortgage for $600 in cash. (2) That the mortgage was given to Nordh without any thought or expectation by either defendants or Nordh that it was to be a binding obligation as between them; and that it was to become a binding obligation only when and if it were assigned to one who should advance money upon the security of the mortgage. (3) That within a day or two after the mortgage was made out to Nordh it was assigned to plaintiff who gave Nordh a check for $600 which Nordh delivered over to defendants.

The check was not put in evidence; plaintiff testified that he could not find it, and it does not appear whether the check, by its terms, was made payable to Nordh (and by him indorsed over to defendants) or whether it was, by its terms, made payable directly to defendants.

The only issue of fact in the lawsuit was the one, answer to which was sought by the question which the court submitted to the jury. That issue is made clear by the following claims and theories of the respective parties:

(1) The plaintiff claims that defendants first consulted Nordh, a real estate broker, and sought his aid in raising $800 upon a second mortgage; that Nordh, as defendants' agent, undertook to

get as much money for defendants as he was able to obtain upon the $800 mortgage, and for that purpose drew the mortgage payable to himself (Nordh), as a dummy, and without any intention by anybody that the mortgage should be or become a binding obligation as between defendants and Nordh; that Nordh then negotiated the mortgage to plaintiff, assigned it to him for $600, which amount was immediately delivered by Nordh to defendants; and that plaintiff had no knowledge that he was dealing otherwise than upon the open market, buying a second mortgage of doubtful value for $200 less than its face value

(2) The defendants claim that they first went directly to plaintiff to borrow $800; that plaintiff told them that a second mortgage for any amount upon the property in question was a hazardous security; but that he would venture to lend $600 upon an $800 mortgage; and that the transaction was such as would have to be handled through a dummy; that plaintiff named Nordh as the dummy to be employed; told defendants to go to Nordh; and that plaintiff would phone Nordh and instruct him what to do.

These being the respective claims of the parties, it is seen at once that Nordh was, in any case, a mere dummy in the transaction; that the mortgage did not have its birth or inception as a binding obligation when it was delivered to Nordh; for that delivery was made for a special purpose, according to the theory of the plaintiff, as well as according to the theory of the defendants, the only difference being this: That plaintiff claims that defendants delivered the mortgage to Nordh for the special purpose of having Nordh go out into the market and sell it to the one who would pay most for it; while defendants claim that the mortgage was delivered to Nordh for the special purpose of having Nordh assign it to plaintiff for $600 as per arrangements previously made by defendants with plaintiff personally. So I say the mortgage had its inception when, and not until, it was delivered to plaintiff. A mortgage has its inception when first it is delivered to somebody with the intention of having it become a binding obligation upon which the one to whom it is delivered could sue in case the conditions of the mortgage were not performed. (*Eastman* v. *Shaw,* 65 N. Y. 522.)

The $800 mortgage in question, then, had its inception when plaintiff took it for a payment by him of $600. The mortgage was tainted with usury at its inception. It is, therefore, void. (*Sabine* v. *Paine,* 223 N. Y. 401.)

The two cases above cited both relate to promissory notes, rather than mortgages. *A fortiori,* the principles there laid down are binding in a mortgage transaction, for mortgages are not pro-

tected by certain provisions of the Negotiable Instruments Law designed to favor innocent purchasers for value of negotiable paper.

Innocence of knowledge of the usury, on the part of the plaintiff, would, in pursuance of well-known equitable principles, enable him to recover back, with interest, the amount he had actually paid for the mortgage, but in no case could he recover more; and he can recover nothing if he had knowledge of the usury. (Gen. Business Law, § 373; *Miller* v. *Zeimer,* 111 N. Y. 441; *Payne* v. *Burnham,* 62 id. 69; *Schanz* v. *Sotscheck,* 167 App. Div. 202.) Other cases studied are the following: *Siewert* v. *Hamel* (91 N. Y. 199); *Dunham* v. *Cudlipp* (94 id. 129); *Sickles* v. *Flanagan* (79 id. 224); *Rider* v. *Gallo, No. 1* (153 App. Div. 334); *Ahern* v. *Good-speed* (72 N. Y. 108) and *Weaver Hardware Co.* v. *Solomovitz* (235 id. 321).

In the case last cited the note was purged of usury by the provisions of section 114 of the Banking Law.

Most of the cases cited in the brief of plaintiff's counsel are those holding that the lender may recover back the amount actually loaned upon a note tainted with usury where he is innocent of any knowledge of the usury.

But the jury has found that plaintiff had knowledge of the usury when he took the mortgage.

The verdict is supported by competent evidence, and I cannot say that it is against the weight of evidence. I do not feel justified in setting aside the verdict.

The complaint must be dismissed. This being an equity action I take it that the allowance of costs is discretionary even though a jury trial was had. (Civ. Prac. Act, § 1477.) I do not feel the defendant should have costs. Judgment dismissing the complaint without costs may enter.